NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| METROPOLITAN FOODS, INC. d/b/a/ DRISCOLL FOODS,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER KELSCH and ACE/ENDICO, INC., and JOHN DOE,<br><br>Defendants. | Civil Action No.: 11-3306 (JLL)<br><br>**OPINION** |

**LINARES, District Judge.**

This matter comes before the Court on a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12©) by Defendant Ace Endico Corp. ("Ace Endico") (Docket No. 15) and one by Defendant Kelsch (Docket Entry No. 18). This Court has considered the submissions in support of and in opposition to the aforesaid motions and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendant Ace Endico's motion is granted with respect to the misappropriation of confidential information claim and denied as to the tortious interference claim, and Defendant Kelsch's motion is granted as to the breach of contract and breach of duty of good faith and fair dealing claims and denied as to the tortious interference claim.

1

## I. BACKGROUND

Plaintiff is a food distribution business which operates throughout the Tri-State area. (Compl. ¶ 10).  The instant action arises out of the alleged misappropriation of Plaintiff Metropolitan Foods d/b/a Driscoll Foods' ("Driscoll") confidential and proprietary information by Defendant Kelsch, a former employee, on behalf of one of Plaintiff's competitors, Defendant Ace Endico. (Compl. ¶¶ 2, 24-29).  Further, Defendant Kelsch allegedly used such information "while still employed at Driscoll Foods in order to take orders from Driscoll Foods' customers on behalf of [Defendant Ace Endico]." (Compl. ¶ 5).

As an employee of the company, Defendant Kelsch allegedly acknowledged receipt of the Driscoll Foods' Employee Handbook on June 25, 2010, which stated that employees may "not disclose to unauthorized persons, including subsequent employers, Driscoll Foods' confidential information" acquired during the course of employment. (Compl. ¶ 15).  During the course of his employment at Driscoll, Kelsch worked with certain longstanding Driscoll customers that represented a substantial volume of business, at the company's direction. (Compl. ¶¶ 24, 27).

Plaintiff alleges that Kelsch abruptly resigned on May 22, 2011. (Compl. ¶ 23). However, "shortly before his resignation Kelsch placed orders for Driscoll Foods' customers through [Ace Endico], and [] he received orders from [] Driscoll Foods' customers, while still employed at Driscoll Foods, and filled these orders through [Ace Endico]." (Compl. ¶ 24). Thereafter, Plaintiff allegedly became aware of at least five of Kelsch's Driscoll customers that ceased doing business with Plaintiff and "that are currently being served by [ACE Endico] through the unlawful use of Driscoll Foods' confidential and proprietary information." (Compl. ¶¶ 25-26).  In doing so, Defendants allegedly improperly used the following information obtained

2

from Driscoll: "customer lists, pricing lists, past customer invoices demonstrating purchasing habits, and client specific manufacturing codes, the knowledge of which have been developed over the years through Driscoll Foods' investment of substantial sums of money and time." (Compl. ¶ 29). Plaintiff further alleges that "Kelsch went so far as to represent to at least one Driscoll Foods' customer that Ace Endico 'purchased' Driscoll Foods." (Compl. ¶ 6).

In addition, Plaintiff alleges that both Defendants used Driscoll Foods' confidential information to solicit and serve Driscoll Foods' customers. Specifically, Plaintiff alleges that Defendants purposefully misappropriated Driscoll Foods' confidential information in order to service existing Driscoll Foods' customers, without justification or excuse. (Compl. ¶¶ 45-46). Driscoll further alleges that they have lost the contracts and/or prospective economic gain of previous customers that they had serviced for an extended period of time prior to Defendants' action. (Compl. ¶¶ 47-48).

On June 6, 2011, Driscoll filed a proposed Order to Show Cause and Complaint in the Superior Court of New Jersey, Law Division, Passaic County, New Jersey, No. PAS-C-000061-11. (Notice of Removal, CM/ECF No. 1). Defendant Ace Endico removed the action to this Court on June 8, 2011. The Court denied without prejudice Plaintiff's application for injunctive relief on June 9, 2011. (CM/ECF No. 3).

The Complaint contains seven causes of action for the following: Misappropriation of Confidential Information (Count I); Breach of Contract (Count II); Breach of Duty of Loyalty (Count III); Tortious Interference with Contractual Relations/Prospective Economic Benefit (Count IV); Breach of Implied Covenant of Good Faith and Fair Dealing (Count V); Violation of

3

Computer Related Offenses Act, N.J.S.A. 2A:38A (Count VI); and Unjust Enrichment (Count VII).[1]

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." As explained by the Third Circuit, "[g]ranting a Rule 12(c) motion results in a determination on the merits at an early stage in the litigation, and thus this court requires 'the movant to clearly establish that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." Inst. for Scientific Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc., 931 F.2d 1002, 1005 (3d Cir.), cert. denied, 502 U.S. 909, 112 S.Ct. 302 (1991) (quoting Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290-91 (3d Cir. 1988)).

Under Rule 12(c), a court must view the facts in the pleadings and any inferences drawn therefrom in the light most favorable to the nonmoving party, and the motion should not be granted "unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment as a matter of law." Perez v. Griffin, 304 Fed. Appx. 72, 74 (3d Cir. 2008) (citing Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 253 (3d Cir. 2004)).  A court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences or unsupported conclusions in its Rule 12(c) review. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

---

[1] The Court notes that Plaintiff incorrectly identifies two separate causes of action as "Count IV." As the causes of action are unrelated, the Court will refer to the second cause of action labeled "Count IV" as "Count VII."

Where the movant alleges that the complaint fails to state a claim upon which relief can be granted, the court applies the same standards as Rule 12(b)(6).  See Turbe v. Government of Virgin Islands, 938 F.3d 427, 428 (3d Cir. 1991).  For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949  (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Further, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007)); Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005) ("[A] Court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss").

### III. DISCUSSION

At the outset, the Court notes that Plaintiff's Complaint does not specify to which Defendant each cause of action refers.  However, in its Opposition to the instant motion, Plaintiff concedes that only the misappropriation of confidential information and tortious interference causes of action pertains to Defendant Ace Endico.  (Opp'n Br., at 1-2).  In addition, Defendant Kelsch only moves for judgment on the pleadings as to the following claims:  tortious interference, breach of contract, and breach of duty of good faith.  The Court will discuss each motion in turn.

5

**1. Defendant Ace Endico**

Defendant Ace Endico asserts that Plaintiff's claim fails to state a basis on which relief may be granted. As such, the Court will employ the same standard as if this motion were brought pursuant to Federal Rule of Civil Procedure 12(b)(6), set forth above.

A.  Misappropriation of Confidential Information

As discussed in the parties' briefs, the majority of this cause of action seeks injunctive relief. However, Plaintiff maintains that it withdrew its application for injunctive relief but preserved its claim for monetary damages. (Opp'n Br., 10-11). Only Defendant Ace Endico moves with respect to this claim. Thus, the Court's discussion is limited to that defendant.

In determining whether allegedly misappropriated information was provided in the course of employment for the sole purpose of furthering its employer's business interests, a court should consider the following: (1) the availability of the information to the general public; (2) whether the employee would have been aware of the information if not for the employment; (3) whether the information gave the employee a competitive advantage vis-à-vis the employer; and (4) whether the employee knew that the employer had an interest in protecting the information to preserve its own competitive advantage. Thomas & Betts Corp. v. Richards Mfg. Co, 342 Fed. Appx. 754, 759-760 (3d Cir. 2009). The Third Circuit further expounded that unlike in trade secret law, the above factors need not be treated as essential elements of a misappropriation of confidential information cause of action. Id. at 760. "The key to determining the misuse of information is the relationship of the parties at the time of disclosure and the intended use of the information." Lamorte Burns & Co. v. Walters, 167 N.J. 285, 300 (2001). "Even in the absence

6

of an agreement, however, the law protects confidential and proprietary information. Lamorte Burns, 167 N.J. 285, 298-99, 301.

Plaintiff does not cite to any cases in support of its proposition that this claim should not be dismissed against Ace Endico, let alone a case in which a court sustained a misappropriation claim against a competitor. In any event, the Court agrees with Defendant Ace Endico that this cause of action is directed toward Kelsch in the Complaint and does not allege facts sufficient to maintain a claim against Ace Endico on this ground.

B. Tortious Interference

In essence, Defendant Ace Endico argues that "competition itself is not wrongful" particularly because it benefits the public and that the Complaint is devoid of any "specific facts or allegations which contend that Ace Endico acted with the requisite knowledge of a contract or had the intent to interfere in any way with Plaintiff's business, its contractual relations, or for that matter any of Plaintiff's customers." (Def. Ace Endico Mot., at 9-10).[2] Accepting all facts pled as true and drawing all reasonable inferences in favor of the non-movant, Plaintiff's Complaint states sufficient facts to satisfy the elements of a tortious interference claim against Ace Endico for the reasons set forth below.

Under New Jersey law, Plaintiff must show that it had a reasonable expectation of economic advantage that was lost as a direct result of defendants' malicious interference, and that it suffered losses thereby. Lamorte Burns, 167 N.J. at 306. Thus, 1in order to state a claim for tortious interference with a prospective economic advantage or contractual relationship, a

---

[2] The Court notes that while the section of Plaintiff's Complaint entitled "substantive allegations" does not contain sufficient factual allegation as to Ace Endico, paragraphs 43-48 which comprise the tortious interference count are directed toward both Defendants.

Plaintiff must plead the following elements: (1) the existence of a reasonable expectation of economic advantage; (2) Defendant interfered intentionally and with malice; (3) a causal connection between Defendant's interference and the loss of prospective gain; and (4) damage. Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 751-752, 563 A.3d 31 (1989); Espinosa v. County of Union, 212 Fed. Appx. 146, 157, 2007 WL 57178 (3d Cir.) cert. denied, 552 U.S. 822, 128 S.Ct 144 (2007).

"New Jersey recognizes that the tortious interference with prospective economic benefit or advantage cause of action is separate and distinct from tortious interference with an existing contract." Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GmBH, Civ No. 10-453, 2010 WL 5239238 *at 4 (D.N.J. 2010); see also Shalley v. Borough of Sea Bright, 2009 WL 1324024, * at 5 (N.J. Super. A.D.). The primary difference between these two related torts is the existence of a contract, rather than merely a reasonable expectation of an agreement. Coast Cities Truck Sales, Inc. v. Navistar Intern. Transp. Co., 912 F.Supp. 747, 772 (D.N.J. 1995).

The New Jersey Supreme Court explains that "it is 'fundamental' to a cause of action for tortious interference with a prospective economic relationship that the claim be directed against defendants who are not parties to the relationship." Printing Mart, 116 N.J. at 752; Coast Cities, 912 F.Supp. at 772 ("[A]n action for tortious interference with a prospective contractual relation cannot be sustained 'where the claim is by one party against the other party to the contract and not against a third party interloper who has interfered with the contractual relationship.'") (quoting Fregara v. Jet Aviation Business Jets, 764 F.Supp. 940, 955 (D.N.J. 1991)). Here, the relevant relationship is that between Driscoll and its customers and the substance of the claim is that Defendants interfered with that relationship. Thus, Defendant's argument that Plaintiff is

attempting to hold it vicariously liable for the acts of Kelsch while employed at Ace Endico is inapposite.

With regard to the first element, Plaintiff alleges that it had contracts with its customers. (Comp. ¶ 3).  As to reasonable expectation of economic advantage, Plaintiff alleges that the customers at issue were longstanding and that it was servicing certain of them on a weekly basis. (Compl. ¶¶ 25, 27, 28, 47, 48).  Plaintiff additionally alleges that these customers composed a substantial portion of Plaintiff's business (Comp. ¶ 28).  Thus, the Court finds that the allegations in Plaintiff's Complaint satisfy this element.

Second, regarding the intentional interference with malice element, the Supreme Court of New Jersey explains as follows: "for purposes of this tort, 'the term malice is not used in the literal sense requiring ill will toward the plaintiff.'  Rather, malice is defined to mean that the harm was inflicted intentionally and without justification or excuse."  Printing Mart, 116 N.J. at 751.  In addition, the standard is flexible and should be determined on an individualized basis in the context of the facts presented.  Lamorte Burns, 167 N.J. at 306.  As explained by the New Jersey Supreme Court, "[o]ften it is stated that the relevant inquiry is whether the conduct was sanctioned by the 'rules of the game,' for where a plaintiff's loss of business is merely the incident of healthy competition, there is no compensable tort injury."  Id.  Defendant contends that Plaintiff does not plead any facts to suggest that Ace Endico interfered intentionally and with malice.  However, as pled in the Complaint, Plaintiff alleges that Ace Endico intentionally filled orders placed by Kelsch on behalf of Driscoll customers knowing that he was employed by Driscoll at the time, and that "[g]iven Kelsch's past employment with Driscoll Foods, Defendants were fully aware of the existence of contracts (or the prospective economic

9

relationship Driscoll Foods had with its customers." (Compl. ¶¶ 24 and 44). In any event, Plaintiff argues that it "is entitled to the reasonable inference that Ace Endico knew of the weekly contracts, which are customary within the industry." (Opp'n, at 9). Defendant does not point to any law on point or specific facts to the contrary.

Further, as to the causation and damage elements, the Court finds that these elements are adequately pled as well. As per the Complaint, the interference discussed above was the alleged cause of the resulting loss of customers to Ace Endico with consequence to Driscoll. Defendant Ace Endico argues that Plaintiff pleads no facts to demonstrate that Ace Endico caused the loss of prospective gain to Plaintiff. However, accepting the facts pled in the Complaint as true that is simply not the case.

Finally, as Plaintiff has adequately pled the requisite elements and for purposes of this motion the Court must take all facts as true and draw all reasonable inferences in favor of the non-movant, any denial by Defendants constitutes a genuine issue of material fact. See e.g. Inst. for Scientific Info., 931 F.3d at 1008 ("We note that defendant's denial of plaintiff's allegations does not warrant a different conclusion. That denial, of course, simply raised . . . a material issue of fact that could not, in the context of a Rule 12(c) motion, be resolved in defendants' favor").

## 2. Defendant Christopher Kelsch

### A. Tortious Interference

As an initial matter, the Court reiterates that the relevant contracts or prospective advantage at issue in Plaintiff's tortious interference claim are between Plaintiff Driscoll and its clients. See Printing Mart, 116 N.J. at 751-752. Defendant Kelsch bases his argument on what

10

he terms "the false premise that the [Employee Handbook distributed to Kelsch by Driscoll] is a contract. . . Driscoll's attempt to manufacture a non-compete agreement is just a transparent attempt to suppress fair competition. Given that the tortious interference claim is based on an alleged contract that does not exist, it should be dismissed on the pleadings." (Kelsch Br., at 5).

However, as discussed above, that argument is irrelevant to the Court's analysis. Rather, Plaintiff adequately pleads the elements of tortious interference. As discussed above in greater detail, Plaintiff alleges that it both had a reasonable expectation of a prospective economic advantage as well as contracts with its client. Defendant Kelsch intentionally interfered with malice when he filled orders on behalf of Ace Endico while employed by Plaintiff Driscoll. Plaintiff also sufficiently pleads that it suffered damage directly resulting from Kelsch's actions, namely the loss of prospective economic gain.

### B. Employment Contract Based Claims[3]

First, both the breach of contract claims and the breach of good faith and fair dealing claims depend on whether the Employee Handbook is a contract. Defendant Kelsch argues that Plaintiff cannot sustain its breach of contract claim because the Employee Handbook which forms the basis of that claim is not a contract. (Def. Kelsch Mot., at 3). In so doing, Kelsch points to various provisions of the Employee Handbook that he argues explicitly state that it is not a contract. (Def. Kelsch Mot., at 3-4; Def. Kelsch Reply, at 2).

---

[3] Pursuant to Federal Rule of Civil Procedure 12(d), if a court considers material submitted outside the pleadings on a Rule 12(c) motion, the court must treat the motion as one for summary judgment. Fed. R. Civ. P. 12(d). However, in considering a motion for judgment on the pleadings, a court may consider the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based on those documents. Pension Benefits Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

Plaintiff relies on Woolley v. Hoffman-LaRoche, Inc, 99 N.J. 284, modified, 101 N.J. 10 (1985), and its progeny in support of its argument that "material fact questions exist as to whether the Handbook's prohibition regarding the misappropriation of confidential [information] gives rise to the contract based claims." (Pl.'s Opp'n, 7). However, that case stands for the proposition that "an implied promise contained in an employment manual that an employee will be fired only for cause may be enforceable against an employer even when the employment is for an indefinite term and would otherwise be terminable at will." Woolley, 99 N.J. 285-86. Plaintiff does not point to any cases in which a court invoked this exception on the employer's behalf. Rather that line of cases creates an exception whereby the representations of an employer in an employee handbook may give rise to enforceable obligations if it gives rise to reasonable expectations that such representations are enforceable obligations. See Varrallo v. Hammond Inc., 94 F.3d 842, 846 (3d Cir. 1996); Witkowski v. Thomas J. Lipton, Inc., 136 N.J. 385, 643 A.2d 546, 550 (1994)).

Further, this Court notes that in Woolley, the Supreme Court of New Jersey explained as follows:

> unless the language contained in the manual were such that no one could reasonably have thought it was intended to create legally binding obligations, the termination provisions of the policy manual would have to be regarded as an obligation undertaken by the employer. It will not do now for the company to say it did not mean the things it said in its manual to be binding. Our courts will not allow an employer to offer attractive inducements and benefits to the workforce and then withdraw them when it chooses, no matter how sincere its belief that they are not enforceable.

Woolley, 99 N.J. 300. Thus, in effect, this Court is now confronted with the inverse situation of that presented to the New Jersey Supreme Court in Woolley.

12

Here, the Employee Manual is rife with statements that it is not a contract. For example, the first page contains the following bold and underlined statement: "this handbook does not constitute a contract of employment – oral or implied – and it should not be relied on as such by you" (Pl's Opp'n, Ex. A, at 1). The New Jersey Supreme Court additionally wrote

> [w]hat is sought here is basic honesty: if the employer, for whatever reason, does not want the manual to be capable of being construed by the court as a binding contract, there are simple ways to attain that goal. All that need be done is the inclusion in a very prominent position of an appropriate statement that there is no promise of any kind by the employer contained in the manual. . . .

Id. at 309. Based on the specific provisions of the Employment Manual and acknowledgement form at issue here, Driscoll did just that.[4]

The Court acknowledges that while the inquiry into whether a particular Employee Handbook is an implied contract because of representations of the part of the employer is generally a question of fact, Witkowski v. Thomas J. Lipton, Inc., 136 N.J. 385 (1994). However, in this instance the Court declines to expand the narrow exception set forth by the New Jersey Supreme Court to the case at bar as a matter of law.

Next, Plaintiff's breach of contract claims and breach of good faith and fair dealing claims are inextricably linked. "To be sure, 'every contract in New Jersey contains an implied covenant of good faith and fair dealing.'" Black Horse Lane Assoc., L.P. v. Dow Chemical Corp, 228 F.3d 275, 288 (3d Cir. 2000); Brunswick Hills Racquet Club, Inc. v. Route 18

---

[4] Another example of the disclaimers in the Employee Handbook are as follows: "[t]his policy does not in any way alter the employment at-will relationship of Driscoll Foods' right to terminate employees at any time for any reason. Employees remain free to resign at any time, and Driscoll Foods may terminate any employment relationship at any time, with or without notice, or with or without cause" (Pl.'s Opp'n, Ex. A., at 2-15). In addition, the acknowledgement form provides as follows: "I understand that the information contained in Driscoll Foods Employee Handbook is intended to serve only as a broad statement of Driscoll Foods policy . . ."; and "I further recognize that nothing contained in the Employee Handbook is part of the employment relationship between Driscoll Foods and any of its employees. . . This Employee Handbook and the policies contained therein are guidelines only and do not in any way constitute, and should not be construed as, a contract of employment between Driscoll Foods and me."

Shopping Ctr. Associates, 182 N.J. 210, 224 (2005).  Further, "[i]n the absence of a contract, there is no implied covenant of good faith and fair dealing . . . ."  Nolan v. Control Data Corp., 243 N.J. Super. 420, 429, 579 A.2d 1252 (App.Div. 1990) (citing Noye v. Hoffmann-La Roche., Inc., 238 N.J. Super. 430, 433, 579 A.2d 12 (App.Div. 1990).[5]  Thus, as the Court has already determined above that under the specific circumstances at bar, the Employee Handbook does not fall within Woolley, Defendant's motion is granted as to the breach of good faith and fair dealing claim as well.

## IV. CONCLUSION

Therefore, for the reasons stated above, Defendant Ace Endico's motion is granted with respect to the misappropriation of confidential information claim and denied as to the tortious interference claim.  As Plaintiff conceded that the other causes of action contained in the Complaint do not pertain to Defendant Ace Endico, the remaining causes of action are dismissed with prejudice as to Defendant Ace Endico.  In addition, Defendant Kelsch's motion is granted as to the breach of contract and breach of duty of good faith and fair dealing claims and denied as to the tortious interference claim.

An appropriate Order accompanies this Opinion.

Dated: February ___, 2012                    _/s/ Jose L. Linares_____
                                             Jose L. Linares
                                             United States District Judge

---

[5] The Court notes that an implied obligation of good faith may be applicable to aspects of the employer-employee relationship which are governed by some contractual terms, even if the employment relationship is "at will."  Nolan v. Control Data Corp, 243 N.J. Super. 420, 579 A.2d 1252 (N.J. Super. A.D., 1990).  However, as the Court already determined that the instant claim does not fall within Woolley, the confidentiality provisions of the Employee Handbook at issue do not fall within this exception.